Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50337 | **DATE** | 6/22/2001 |
| **CASE TITLE** | Jackowski vs. Seoco, Inc. Northern | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendant's motion for summary judgment is denied. Plaintiff's motion to strike defendant's second motion for summary judgment is denied as moot. The parties are to schedule a settlement conference before Magistrate Judge Mahoney within the next 30 days.

(11) ■ [For further detail see order attached to the original minute order.]

DOCKETED
JUN 2 2 2001

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ANISA M. JACKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 98 C 50337 |
| | ) | |
| v. | ) | |
| | ) | |
| SEOCO, INC. NORTHERN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Seoco, Inc. Northern ("Seoco Northern") has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, addressing for the second time the issue of whether Seoco Northern and Seoco, Inc. ("Seoco") constitute a single employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). As the court stated in its Order dated February 3, 2000, affiliated corporations will be considered a single employer under Title VII where: (1) the traditional conditions for piercing the corporate veil are present; (2) an enterprise splits itself into a number of corporations, each with fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the discrimination laws; or (3) the parent corporation might have directed the discriminatory act of which the employee of the subsidiary is complaining. Papa v. Katy

Indus., Inc., 166 F.3d 937, 940-41 (7th Cir.), cert. denied, 528 U.S. 1019 (1999).[1]

Identification of an "employer" under Title VII is a question of federal law. Carver v. Sheriff of LaSalle County, 243 F.3d 379, 382 (7th Cir. 2001). Ordinarily, the issue of whether a corporate identity should be disregarded is committed to the factfinder. Secon Serv. Sys., Inc. v. St. Joseph Bank & Trust Co., 855 F.2d 406, 414 (7th Cir. 1988). However, summary judgment is appropriate when a trial would reveal no further meaningful evidence, and the record on summary judgment shows no genuine issue of fact exists as to whether two corporations should be treated as one. Id.

## A. Piercing The Corporate Veil

As for the first test, a corporate entity will be disregarded and the veil of limited liability pierced when two requirements are met: (1) there must be a unity of interest and ownership such that the separate personalities of each corporation no longer exist; and, (2) the circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. Hystro

---

[1] In Heinemeier v. Chemetco, Inc., 246 F.3d 1078 (7th Cir. 2001), the Seventh Circuit applied the five-factor, "economic realities" test to the issue of whether the plaintiff was an employee (versus independent contractor) of an affiliated company. In this case, neither party has portrayed the issue as whether Jackowski was an employee or an independent contractor of Seoco. Therefore, the court will continue to follow Papa.

2

Prod., Inc. v. MNP Corp., 18 F.3d 1384, 1388-89 (7th Cir. 1994); Sea-Land Serv., Inc. v. Pepper Source, 941 F.2d 519, 520 (7th Cir. 1991). In determining whether a corporation is so controlled by another to justify disregarding their separate identities, courts focus on four factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) undercapitalization; and (4) one corporation treating the assets of another corporation as its own. Hystro, 18 F.3d at 1389; Sea-Land, 941 F.2d at 921.

In its February 3, 2000 Order, the court found questions of fact as to whether grounds for piercing Seoco Northern's corporate veil existed. Nothing in Seoco Northern's latest submissions has changed this conclusion.

1. **Unity Of Interest And Ownership**

If anything, the submissions raise substantial questions as to whether Seoco Northern properly maintained a corporate existence separate and apart from Seoco. For example, the record shows Seoco Northern did not adequately maintain corporate records or comply with corporate formalities. The purported "corporate minutes" for Seoco Northern for the years 1996 through 2000 merely show the same person(s) being reelected as the director and corporate officers (LR56.1(a) Addendum, Exh. 1, Puckett Aff., Exh. G). Ed Schmidt admits Seoco Northern did not

3

hold Board meetings. (E. Schmidt dep., p. 21) Seoco has produced minutes from only one Board meeting (in 1996), which reflect that business pertaining to both companies was discussed. (LR56.1(a) Addendum Exh. H; LR56.1(b) ¶¶ 83(g),(p)) In short, not all corporate formalities were followed.

Questions of fact also surround the second factor, the commingling of funds. As stated in the court's February 3, 2000 Order, a centralized cash management system where accounting records track the indebtedness of each entity is not the equivalent of intermingling funds. Fletcher v. Atex, Inc., 68 F.3d 1451, 1459 (2d Cir. 1995). Seoco Northern admits the companies use a common paymaster which issues checks for both corporations. Jan Puckett, the Secretary/ Treasurer of both companies, states that expenses are allocated to each company, as are deposits and assets. (LR56.1(a) Addendum Exh. 1, Puckett Aff., ¶¶ 7, 25, 39-40, 42, 43; see also Ed Schmidt dep., pp. 52-53, 56-58)

It is not clear whether these expenses includes payroll expenses. For example, Ed Schmidt states he has not received a salary from Seoco Northern. He also states that, to the extent he has dealt with Seoco Northern employees, he has done so in his capacity as President of Seoco Northern. The record does not show whether, when acting in his role as Seoco Northern President, Ed Schmidt was working for free, or whether Seoco was

4

footing the bill. The latter scenario indicates funds were commingled and lends support to the conclusion that each corporation has failed to maintain a separate existence. See Hystro, 18 F.3d at 1390 (fact that parent paid salary of subsidiary's officers supported jury finding that subsidiary did not maintain separate corporate identity).

As for undercapitalization, both parties dispute whether Seoco Northern was undercapitalized at its inception in 1981. This does not seem to be the relevant time period. Jackowski did not start working at Seoco Northern until 1996. In any event, this factor is relevant only to the extent it shows a corporation has been operated with so little money that it constitutes a shell. See Browning-Ferris Indus. v. Ter Maat, 195 F.3d 953, 960-61 (7th Cir. 1999), cert. denied, 529 U.S. 1098 (2000). The court noted in its February 3, 2000 Order that neither party has produced evidence showing whether Seoco Northern has been a profitable corporation in its own right or, if not, whether it has been responsible for its own debt. In other words, the court has yet to see any actual financial statements for either corporation.

A failure to keep minutes of corporate meetings may not be significant enough in itself to warrant forfeiture of limited liability, Ter Maat, 195 F.3d at 961, but other facts in this case overwhelmingly support a finding that Seoco and Seoco

5

Northern are united in ownership and interests. Jackowski's paycheck shows "Seoco, Inc." as her employer, her application for employment refers only to "Seoco, Inc.," management referred to her as a "Seoco, Inc." employee,[2] all forms Jackowski received, including the employee handbook, refer only to "Seoco, Inc.," Seoco Northern is listed in the Rockford telephone book as "Seoco, Inc.," and customers and vendors recognize "Seoco, Inc." as the party to bill for products shipped to Seoco Northern. (LR56.1(b) ¶¶ 58, 64, 65, 66, 67, 70, 73, 77, 78, 79; LR56.1(a) Addendum, Exh. 3, Jackowski dep. Exh. 4, p. 2) As the Seventh Circuit stated in Papa, a parent holding itself out as the real party with whom a creditor nominally of a subsidiary is dealing renders the parent liable for the acts of its subsidiary. Papa, 166 F.3d at 941; see also Middle Tenn. News Co. v. Charnel of Cincinnati, Inc., No. 00-2296, ___ F.3d ___, 2001 WL 477434, at *2 (7th Cir. May 8, 2001) (three companies held themselves out to public as one so that innocent third parties had no way of knowing with which they were dealing and under Indiana law, they could not claim the corporate law benefit of limited and separate liability). The facts of this case show third parties are completely unaware of Seoco Northern's existence.

---

[2] Scott Schmidt, the Vice President of both Seoco and Seoco Northern, now states that he was "mistaken" in referring to Jackowski as an employee of Seoco, Inc. Such a defense rests entirely on his credibility and is not properly decided on a motion for summary judgment.

Relying on Puckett's affidavit, Seoco Northern argues Owen Fouts, the manager at Seoco Northern, supervises the employees on a daily basis. (See id. Exh. 1, Puckett Aff., ¶ 32) This is inadequate for several reasons. First, there has been no foundation established for how Puckett knows what Fouts does on a daily basis. Second, Fouts' affidavit is oddly silent on this issue. Third, Puckett does not explain what she means by "supervises," and Seoco Northern admits Ed Schmidt is responsible, along with Fouts, for hiring and firing at Seoco Northern. (LR56.1(a) ¶ 43; see also E. Schmidt dep., p. 29)

### 2. **Fraud or Injustice**

Either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice, will satisfy the second element. Sea-Land, 941 F.2d at 522. It is unjust for a parent corporation that caused a subsidiary's liabilities to escape such liabilities. Id. at 524. Such could be the case here. Congress exempted small employers from Title VII so as to spare them the enormous costs of litigating such cases. If the facts support the ultimate conclusion that Seoco and Seoco Northern have become one corporation, Seoco is not the small employer Congress intended to protect. In addition, all the company documents, including Jackowski's paycheck, have used the name "Seoco" or "Seoco, Inc." It is simply unfair to now tell Jackowski that her

7

true employer was Seoco Northern and that this entity is not subject to Title VII.

B. **Direct Involvement**

Aside from whether grounds exist to pierce Seoco Northern's corporate veil, questions of fact also exist as to Seoco's personal, direct involvement in the alleged harassment. Fouts claims he alone made the decision to not allow Jackowski to return to work and did not consult with any of the Schmidts or Puckett before making this decision. (LR56.1(a) Addendum, Def. Exh. 4, Fouts Aff., ¶¶ 8-9). However, his statements are misleading. The record is clear that Scott Schmidt was involved in the events leading up to Jackowski's abrupt departure. Regardless of whether actions of Fouts and/or Scott Schmidt caused Jackowski to leave work early, or who decided to make Jackowski's departure permanent, her claim of racial and/or sexual harassment (which may be independent of her discharge) involves both Ed and Scott Schmidt. (LR56.1(a) ¶¶ 37, 45, 53, Pl. Resp.)

Seoco Northern argues the alleged actions of Ed and Scott Schmidt were in the capacity of officers of Seoco Northern. It is true that courts presume dual directors to be wearing their "subsidiary hats" when acting for the subsidiary, and their "parent hats" when acting for the parent. United States v. Bestfoods, 524 U.S. 51, 69-70 (1998) (discussing corporate veil

piercing and affiliate liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980); Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997) (addressing parent's liability for subsidiary's actions under the Age Discrimination in Employment Act). A duel officer is presumed to act on behalf of the corporation for whom the officer claims to act, but his actions must also be examined objectively, from the viewpoint of determining whether his actions were contrary to the subsidiary's interests yet advantageous to the parent, or vice versa. Bestfoods, 524 U.S. at 70 n.13.

At this stage, the court is unable to objectively determine what hat Ed and Scott Schmidt were wearing during the events which form the basis of Jackowski's claims. For example, Ed Schmidt states that, to the extent he has dealt with Seoco Northern employees, he was dealing with them in his capacity as President of Seoco Northern. (LR56.1(a) Addendum, Def. Exh. 2, E. Schmidt Aff., ¶ 16) Yet, as stated above, he has not received any income from Seoco Northern in the past five years. (Id. ¶ 6) Such evidence could be used to counter his assertion that when dealing with Seoco Northern employees, he was acting in his capacity as President of Seoco Northern, raising questions of fact as to what hat he was actually wearing.

## Conclusion

For the reasons set forth above, Seoco Northern's motion for summary judgment is denied.

ENTER:

PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 22, 2001